IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT RAMSEY, | ) | CASE NO. 1:10-CV-1695 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM OPINION** |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 18). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Robert Ramsey's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below, the Court REVERSES the decision of the Commissioner and REMANDS the case back to the Social Security Administration.

## I.  INTRODUCTION & PROCEDURAL HISTORY

In November 2007, Robert Ramsey ("Plaintiff" or "Ramsey") protectively filed applications for Disability Insurance benefits and Supplemental Security Income, alleging that he became disabled on May 3, 2007, due to suffering from a host of medical problems, including: heart and kidney problems, irritable bowel syndrome, gout, breathing problems, extreme fatigue, high blood pressure, depression, back problems, and a tilted diaphragm.  (Tr. 102-16, 139). Plaintiff's applications were denied initially and upon reconsideration.  (Tr. 60-63).  Ramsey timely requested and was granted an administrative hearing before Administrative Law Judge O. Price Dodson (the "ALJ" or "ALJ Dodson").  (Tr. 88-91, 39-49).

On September 1, 2009, ALJ Dodson conducted a hearing via video wherein Plaintiff, represented by counsel, appeared and testified.  (Tr. 17-37).  The ALJ presided over the hearing from Norfolk, Virginia, and Plaintiff appeared in Erie, Pennsylvania.  (Tr. 7).  Vocational expert, Ms. Paula Day (the "VE"), also testified at the hearing.  (Tr. 34-36).  On October 13, 2009, ALJ Dodson issued a written decision denying Plaintiff's applications for benefits.  (Tr. 7-16).  In review of Plaintiff's applications, ALJ Dodson applied the five-step sequential evaluation analysis,[1] and concluded that Plaintiff was not disabled.  *Id.*  Following this ruling, Ramsey

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)  If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

requested review of the ALJ's decision from the Appeals Council on December 10, 2009, (Tr. 1-3), but, on June 10, 2010, it denied Ramsey's request, thereby making the ALJ's decision the final decision of the Commissioner.  (Tr. 55-57).  Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Plaintiff, born on January 9, 1956, was fifty-three years old on the date the ALJ issued his ruling, which is defined as a "person closely approaching advanced age" for Social Security purposes.  (Tr. 20); 20 C.F.R. § 416.963(d).  Ramsey earned his GED and attended vocational training for machine shop skills.  (Tr. 21).  He has past experience working as a saw operator, machinist, steel press helper, and as a plastics injection molding operator.  (Tr. 34).

---

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## II.  ALJ'S DECISION

After completing a review of the record, ALJ Dodson determined that Ramsey was not disabled.  (Tr. 7-16).  At step one of the sequential evaluation analysis, the ALJ found that Ramsey had not engaged in substantial gainful activity since May 3, 2007, Plaintiff's alleged onset date.  (Tr. 9).  At step two, the ALJ ruled that Plaintiff suffered from the following severe impairments: "renal insufficiency, depression, coronary artery disease, and degenerative disc disease".  *Id.*  But, at step three, ALJ Dodson concluded that none of these impairments, individually or in combination, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 10-11).  Before proceeding to step four, the ALJ found that Ramsey retained the residual functional capacity ("RFC") to perform light work with certain limitations.  (Tr. 12).  Specifically, ALJ Dodson opined that Plaintiff "must be allowed to alternate sitting and standing as needed, . . . [could] engage in only occasional bending, stooping and crouching, and from a mental standpoint, . . . [was] limited to simple repetitive tasks."  *Id.*  Next, at step four, the ALJ determined that Ramsey could not perform any of his past work because the exertional demands of those jobs exceeded Plaintiff's current RFC.  (Tr. 15).  Finally, at step five, ALJ Dodson held that Plaintiff could perform other jobs which existed in significant numbers in the national economy, such as a warehouse worker, office helper, or order caller.  *Id.*

## III.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform

4

"substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001)*; Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner*, 745 F.2d at 387.  However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. <u>ANALYSIS</u>

Ramsey challenges the ALJ's decision on two grounds.  First, Ramsey contends that ALJ Dodson improperly evaluated his credibility.  Second, Plaintiff maintains that the ALJ erred in assessing the effects of his mental impairments.  Because the Court finds that Plaintiff's second assignment of error has merit, the Court will begin by addressing that issue.

### A.  Mental Impairments

Plaintiff argues that the ALJ's decision should be remanded because the ALJ failed to incorporate all of the limitations related to Plaintiff's mental impairments into the hypothetical questions posed to the VE.  There were only two physicians who evaluated Plaintiff's mental health during the relevant period: Dr. Richard Halas and Dr. Tasneem Khan.  On March 17, 2008, Richard Halas, a clinical psychologist, performed a consultative examination on Plaintiff. (Tr. 337-340).  Following this examination, state agency consultant, Tasneem Khan, Ed. D., performed a review of Plaintiff's medical file and assessed his mental RFC.  (Tr. 341-44).

Dr. Halas diagnosed Plaintiff with major depression (recurrent type) and anxiety disorder (not otherwise specified).  (Tr. 340).  He found Ramsey to have significant psychological issues and assessed his overall GAF score as 55.  *Id*.  With regard to Plaintiff's mental ability to perform work related tasks, Dr. Halas opined that Plaintiff's ability to relate to others was markedly impaired, and his ability to withstand the stresses and pressures of day-to-day work as moderately impaired.  *Id.*  But, Dr. Halas reported that Ramsey was only mildly impaired in his ability to do simple, repetitive tasks, and that he had no problem with following simple one and two step directions and instructions.  *Id.*

6

After reviewing Plaintiff's entire file, including Dr. Halas's assessment, Dr. Khan stated that "[Plaintiff's] allegations of limitations are generally consistent with his presentation at the [consultative examination] and are considered credible." (Tr. 343). However, Dr. Khan specifically disagreed with one of the findings announced by Dr. Halas. Dr. Khan indicated that he gave little weight to Dr. Halas's conclusion that Plaintiff was markedly limited in his ability to relate to others because this finding was not supported by the evidence in the record. *Id.* Dr. Khan noted that Ramsey did not state that he had problems getting along with others, and the record showed that Plaintiff was able to run errands in public and attend church. *Id.* Thus, Dr. Khan concluded that Plaintiff could "sustain at least simple routine work tasks in a setting where [his] duties [were] static, there [we]re no fast paced production quotas, and social interactions [we]re limited and superficial." *Id.* Dr. Khan further noted that Ramsey "would do best with limited exposure to the general public." *Id.*

In addressing Plaintiff's mental functioning, ALJ Dodson only explicitly addressed the opinions offered by Dr. Halas. (*See* Tr. 14). The ALJ rejected Dr. Halas's finding that Plaintiff was markedly impaired in his ability to relate to others, explaining that this conclusion was "not supported by the findings or the claimant's treatment history or lack thereof." *Id.* However, the ALJ gave moderate weight to the remaining portion of Dr. Halas's findings. *Id.* In consideration of this evidence, ALJ Dodson limited Plaintiff to simple repetitive tasks. *Id.*

Although the ALJ did not specifically address the conclusions reached in Dr. Khan's mental RFC evaluation, his opinion stated that he gave significant weight to the opinions of the state agency medical and psychological consultants, one of whom was Dr. Khan. *Id.* Plaintiff now asserts that because the ALJ accepted Dr. Khan's findings and assigned significant weight

to such, the ALJ should have incorporated Plaintiff's diagnosis with anxiety disorder and all of Dr. Khan's work-related limitations into the hypothetical questions he posed to the VE. Particularly, Ramsey submits that ALJ Dodson should have included Dr. Khan's notation that Plaintiff was restricted to work involving mostly static duties, no fast paced production quotas, and only limited and superficial social interaction.  Instead, two of the three hypothetical questions ALJ Dodson posed to the VE merely described Plaintiff's impairments as limiting him to simple, repetitive tasks, without more specification.  (Tr. 34-35).  Moreover, the third hypothetical described an individual with limitations as described in Plaintiff's testimony, to which the VE responded that such an individual would be precluded from all work.  (Tr. 35-36).  Ramsey purports that the ALJ's failure to include Dr. Khan's additional restrictions, without offering some explanation for rejecting these restrictions, was error.  Accordingly, he maintains that this error precluded the ALJ from relying upon the VE's response to the first two hypothetical questions because it is impossible to know whether these additional restrictions would have eliminated the jobs identified by the VE.

With regard to Plaintiff's diagnosis with anxiety disorder, the Court finds that the ALJ was not compelled to include Plaintiff's diagnosis of anxiety disorder in the hypothetical questions.  An ALJ's hypothetical question need only reference the claimant's limitations; there is no requirement that it recite each of the claimant's medical conditions.  *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("In *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001), we stated that a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions.").  While the ALJ is not compelled to include each of the claimant's medical ailments in the hypothetical question he poses to the VE, such testimony only provides substantial evidence to support the ALJ's decision when the

8

hypothetical question posed accurately portrays Plaintiff's physical and mental limitations.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779-80 (6th Cir. 1987).  Based on this tenant, the Court agrees with Plaintiff that the ALJ's hypotheticals should have either included Dr. Khan's additional limitations or clearly explained why they were being omitted.

Though Defendant asserts a number of arguments purporting to justify the ALJ's treatment of the additional restrictions announced by Dr. Khan, none of these arguments excuse the ALJ's unexplained omission of this information from the hypothetical questions posed to the VE.  To begin, the Commissioner suggests that the Court should infer that the ALJ rejected Dr. Khan's work-related limitations for the same reason the ALJ rejected Dr. Halas's finding that Plaintiff had a marked impairment in social functioning – an argument the Court finds to be without merit.  A reading of Dr. Khan's report clearly shows that he also rejected Dr. Halas's finding that Plaintiff was markedly impaired in the area of social functioning because that degree of limitation was not supported by the record.  Yet, despite disagreeing with Dr. Halas on this issue, Dr. Khan still found that Plaintiff's work should involve only static duties, with no fast paced production quotas and limited social interaction.  Therefore, ALJ Dodson's rejection of Dr. Halas's marked limitation finding was *consistent* with Dr. Khan's opinion.  Accordingly, Defendant's argument that "[i]t is reasonable to infer that the ALJ rejected [the] social interaction limitations prescribed by Dr. Khan for the same reasons he rejected similar limitations prescribed by Dr. Halas" is not persuasive because both the ALJ and Dr. Khan discredited Dr. Halas's finding for the same reason – a lack of support in the record.  However, after acknowledging this inconsistency, Dr. Khan still imposed additional limitations on Plaintiff's ability to work regarding both the amount of social interactions Plaintiff's work involved with others and the pace of Plaintiff's work.

In other words, had Dr. Khan accepted Dr. Halas's marked limitation finding, Defendant's argument would be more convincing because the reasons asserted by the ALJ for rejecting Dr. Halas's opinion could arguably apply to the ALJ's rejection of such within Dr. Khan's report.  But, the fact that Dr. Khan discredited Dr. Halas's opinion for the same reason enumerated by the ALJ strongly undercuts Defendant's argument here.  It also appears that this argument amounts to a *post hoc* rationalization and asks the Court to render a decision based on pure speculation.  Furthermore, even if the Court accepted Defendant's argument here, it would not fully explain the ALJ's actions because Dr. Khan's restrictions not only pertained to the amount of social interaction Plaintiff's work should involve, but also limited Ramsey's exposure to fast paced quota driven employment, a condition which ALJ Dodson did not address in his discussion of Dr. Halas's opinion.  Unfortunately, because the ALJ did not articulate why he rejected these significant limitations contained within Dr. Khan's opinion, after assigning significant weight to the doctor's findings, it is impossible for the undersigned to know whether the ALJ had justifiable reasons for rejecting them, or whether he merely overlooked them.  As a consequence, the Court agrees with Plaintiff that the VE's testimony did not provide substantial evidence to support the ALJ's decision because the hypothetical did not accurately portray Plaintiff's impairments.  *See Varley*, 820 F.2d at 779.

Contrary to Defendant's contention, the ALJ's failure was harmful because it undermined the validity of the VE's response to the ALJ's hypothetical questions.  This is not a situation as in *Varley* where the ALJ's hypothetical question reasonably accounted for Plaintiff's limitations.  *See id.* at 780.  (Finding that although the ALJ's hypothetical question omitted, *inter alia*, the claimant's need to avoid noise, there was no error because the vocational expert explained that the jobs identified were in an office setting where the noise level was low.).  Instead, in this case,

10

ALJ Dodson's hypothetical questions contained no mental restrictions on Plaintiff's ability to work other than that he be limited to simple, repetitive tasks. The undersigned finds that this statement was insufficient to convey to the VE that there were limitations on Ramsey's ability to interact socially with others or that his work should not involve high production quotas as indicated by Dr. Khan.

The undersigned also gives no significant weight to the Commissioner's argument that Dr. Khan's statement that Plaintiff could perform "at least" simple routine work implied that Plaintiff was not only limited to this type of work. (Tr. 343). Although Dr. Khan prefaced his thought with the words "at least", Defendant has not come forward with any other evidence demonstrating that Dr. Khan believed Plaintiff could perform work above this level. Therefore, the undersigned is not persuaded that Dr. Khan intended his statement to be interpreted as Defendant now suggests.

Finally, the Commissioner argues that there was no evidence to support Dr. Khan's additional limitations and that Plaintiff's lack of treatment for mental disorders further undermined Dr. Khan's conclusions. Defendant's final arguments amount to nothing more than *post hoc* rationalizations, supposing to justify the ALJ's decision after the fact. If ALJ Dodson believed that Dr. Khan's conclusions were unsupported by the record or did not warrant credit, then the ALJ should have stated so in his opinion. Because the ALJ indicated that he assigned significant weight to Dr. Khan's findings, the undersigned is reluctant to presume that the ALJ purposely rejected these limitations without any indication from the ALJ that he intended to do so. Although Plaintiff did not seek treatment for his mental disorders during the relevant time period, there is evidence demonstrating that he suffered from such ailments, namely the reports

11

issued from Dr. Halas and Dr. Khan.  Thus, these arguments presented by the Commissioner are unavailing.

## B.  Plaintiff's Credibility

Given the Court's prior ruling regarding the inadequacies in the hypothetical questions posed by the ALJ to the VE, it is not necessary for the Court to conduct a lengthy discussion of the ALJ's credibility finding.  After reviewing the ALJ's opinion, it appears that ALJ Dodson provided a number of legitimate reasons for discounting Plaintiff's testimony.  These reasons included Plaintiff's positive response to medication, history of conservative treatment, doctor reports of symptom magnification, and Plaintiff's own statement to his treating physician, Dr. Douglas Angerman, that his examination results from a prior disability examination were not valid because he was "simply [trying] to get [] out of work."  (Tr. 13, 283).  However, because ALJ Dodson will now have a second chance to review Plaintiff's applications, it would behoove the ALJ to address Plaintiff's challenges to his credibility findings.  Accordingly, the undersigned urges the ALJ to explain how Plaintiff's osteoarthritis and fatigue factored into his credibility finding.  Additionally, ALJ Dodson should better indicate how the medical opinion evidence offered by doctors such as Dr. Cho and Dr. Angerman, and Plaintiff's treatment and testing, or the lack thereof, influenced his decision.

## VI.  **DECISION**

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court REVERSES the decision of the Commissioner and REMANDS the case to the Social Security Administration.

IT IS SO ORDERED.

s/ Kenneth S. McHargh

Kenneth S. McHargh

United States Magistrate Judge

Date:  November 29, 2011.